**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Case No. 18 B 04116 |
| | ) | |
| Timothy Shannon, | ) | Judge Carol A. Doyle |
| | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

Timothy Shannon, the debtor in a chapter 13 bankruptcy case, seeks the return of his car

from the City of Chicago.  The City impounded Shannon's car before he filed his bankruptcy

petition.  He filed a plan treating the City's claim as unsecured.  The City filed an unsecured

proof of claim and did not object to the plan, which was confirmed.  After confirmation,

however, the City refused to return the car.  The City then filed an amended proof of claim

asserting a secured claim instead of an unsecured claim.

Shannon filed a motion alleging that the City violated  the automatic stay by refusing to

return the car.  The City responds, in effect, that it can ignore the terms of the confirmed plan

because its possessory lien on Shannon's car passes through the bankruptcy unaffected.  The City

contends that two exceptions to the automatic stay apply:  the exception in § 362(b)(3) for certain

types of liens and the exception in § 362(b)(4) for governmental units enforcing their police

power.  The City therefore argues that it need not return the car and can demand payment of the

full amount owed.

1

Neither argument has merit.  First, the City is bound by the terms of the confirmed plan.

The City is only entitled to payment as an unsecured creditor in this case.  Second, the automatic

stay requires the City to return the car to Shannon because neither exception to the automatic stay

applies in this case.  The City should have released the car as soon as Shannon requested it after

the bankruptcy case was filed.


I.    Background

Shannon filed a chapter 13 bankruptcy petition on February 15, 2018.  The City seized

Shannon's car sometime before he filed for bankruptcy.  In his Schedule A/B, Shannon disclosed

that he owns a 1997 Buick Park Avenue with 130,000 miles and worth $2,675.  He scheduled the

City as an unsecured creditor owed $1,645 for "fines."  He filed a proposed chapter 13 plan with

his petition.  The plan contained no provision for payment to the City as a secured creditor.  Two

weeks later, on February 27, 2018, the City filed an unsecured claim in the amount of $3,160 for

"parking tickets."  Attached to the proof of claim was a list of what appear to be tickets issued on

three different license plates over the course of many years, some from as far back as 1999.  In

April 2018, Shannon filed an amended plan that again did not provide for the City to be paid as a

secured creditor.  The City did not object to the plan.  It was confirmed on May 1.

After confirmation, Shannon's counsel contacted the City to arrange for return of the car.

The City refused to return the car unless Shannon modified his plan to treat the City's claim as

secured and pay it in full under the plan.  On May 2, the City filed an amended proof of claim in

which it increased the amount of its claim to $5,600 owed for "parking tickets" and asserted that

the claim was "secured" by a motor vehicle.  The basis for perfection stated in the proof of claim

was:  "Vehicle Possessory Lien - 1997 Buick."  The attachments were the same ones attached to

the original claim and showed the same $3,160 amount due, but there was an additional page that

said:

> Impound Debt
> Fine      $ 1,000
> Tow      $   150
> Storage  $ 2,190
> Total     $ 2,440

The City filed a second amended claim on July 3, 2018.  It asserted that $5,600 was owed

for "Fines for violations of the Chicago Municipal Code, and related fees" and that it was secured

by a possessory lien on the Buick.  The claim said that the City has a lien on a motor vehicle as

follows:  "Possessory Lien in vehicle plate no. AG61417."  The asserted basis for perfection is

"possession."  There were no attachments to this amended claim.

After the City refused to return the car, Shannon filed a motion alleging that the City

willfully violated the automatic stay by refusing to release the car.  He relies on a decision of the

Seventh Circuit Court of Appeals holding that the automatic stay requires a secured creditor with

possession of a chapter 13 debtor's vehicle before the petition date to return the vehicle as soon

as the petition is filed.  *See Thompson v. GMAC, LLC*, 566 F.3d 699 (7th Cir. 2009).  Shannon

notes that the City relies on a decision of one bankruptcy judge in this district who concluded that

the exception to the automatic stay in § 362(b)(3) applies to its possessory lien and permits the

City to keep the car.  Shannon argues that the City ignores three other decisions from bankruptcy

judges in this district who concluded on various grounds that the automatic stay requires the City

to return the cars of chapter 13 debtors in these circumstances.

The City responds to Shannon's motion for sanctions with a number of arguments.  The City contends that the automatic stay does not apply because: (1) *Thompson* was wrongly decided, (2) the exception to the automatic stay in § 362(b)(3) for certain types of post-petition lien perfection applies, and all bankruptcy court decisions holding otherwise are incorrect, and (3) the police power exception in § 362(b)(4) also applies.  The City argues as well that the confirmed plan has no impact on it because the plan did not strip its lien, so the lien passed through the confirmation process unaltered.  The City therefore asserts that it is free to hold the car despite the confirmed plan and can force Shannon to pay the full amount the City now claims it is owed - $5,600 -  based on its pre-petition seizure of a nearly twenty-year old car worth $2,675.[1]

To resolve this dispute, the court must first determine the effect of the confirmed plan on the City's rights.  The court must then decide whether the automatic stay applies to stop the City from keeping possession of the car to collect on the debt owed by Shannon.


II.   Binding Effect of Confirmed Plan

Shannon argues that the City is bound by the terms of the confirmed plan that treats the City's claim as an unsecured debt.  He asserts that the City itself filed an unsecured claim before confirmation and did not object to the plan even though it treated the City as an unsecured

---

[1]Shannon also filed an objection to the City's claim.  He argues that the ordinance granting the City a possessory lien on seized cars is invalid based on *In re Howard*, 584 B.R. 252 (Bankr. N.D. Ill. 2018), and that the City failed to provide an itemization to support the amount Shannon allegedly owes.  That objection will be addressed in a separate opinion.  It is worth noting here, however, that any secured claim of the City is necessarily limited to the value of the collateral under § 506(a), in this case presumably $2,675.

.

creditor.[2]  Shannon seems to argue that the City has given up any rights it may have had as a

secured creditor, and must therefore return the car and receive payment under the plan as an

unsecured creditor.

The City responds that the plan does not contain provisions required to strip a lien so its

lien was not eliminated through the confirmation process.  The City therefore contends that the

lien "passed through" the bankruptcy unaltered and that it is free to keep possession and demand

full payment of the $5,600 amount alleged in the second amended claim.  The City pays lip

service to the principle that it is bound by the terms of a confirmed plan as every creditor is.  But

the City also asserts that its lien passed through the confirmation process unaltered, that it could

amend its proof of claim post-confirmation because it did so before the government bar date, and

that the automatic stay does not require the car to be returned.  The City therefore contends that it

is free to refuse to return the car until the debtor amends its plan to pay the entire amount of the

amended claim as a secured claim.  The net effect of the City's positions, if upheld, would allow

the City to ignore the confirmation process and force a debtor to pay it in full after confirmation

based on the City's possession of a vehicle no matter what the plan says.

The City is correct that its lien was not stripped off through confirmation of the plan.  The

national plan form used in this district requires a debtor who seeks to "strip off" a lien, pay less

than the allowed amount of the secured claim, or avoid certain types of liens, to give the secured

creditor notice of this intention in several ways.  First, in Part 1 of the plan, the debtor must

_____

[2]The plan does not directly address the City's claim; the City is not listed in any provision
of the plan.  The effect of this omission is that the City's claim is treated as unsecured.  Part 3 of
the national plan form (Official Form 113) used in this district requires debtors to specify all
secured creditors to be paid under the plan.  If a creditor is not specifically listed in one of those
paragraphs, it will be paid only as an unsecured creditor.

5

check one of the three boxes stating "Included," which notifies the creditor that the debtor seeks

to limit the amount paid on a secured claim or avoid a lien.  Then, the debtor must expressly

request the relief sought by completing paragraphs 3.2, 3.4 or 8 of the plan, in which the debtor

must identify the creditor and the proposed treatment.  If the debtor fails to check the appropriate

"Included" box in Part 1, then the treatment of a secured creditor named in sections 3.2, 3.4, or 8

of the plan will not be effective.  Finally, if the debtor seeks to strip down or strip off a lien (*i.e.*,

pay less than the total amount owed because the value of the collateral is lower) in section 3.2 of

the plan, he must serve the plan on the secured creditor in accordance with Rule 7004 of the

Federal Rules of Bankruptcy Procedure.  *See* Fed. R. Bankr. P. 3012(b), 3015(d).

Here, Shannon did not check any box in Part 1 of the plan to give notice of an attempt to

affect the lien of a secured creditor.  He also failed to identify the City as a secured creditor

anywhere in the plan.  The City is therefore correct that confirmation of the plan did not

eliminate its lien on Shannon's car.  A lien that is not treated in a plan generally passes through

the bankruptcy case unaffected.  *See, e.g., In re Pajian*, 785 F.3d 1161, 1163 (7th Cir. 2015); *In

re Penrod*, 50 F.3d 459, 461 (7th Cir. 1995);  *In re Turner*, 558 B.R. 269, 278 (Bankr. N.D. Ill.

2016).

This does not mean, however, that the City could ignore the confirmation process and

force Shannon to amend the confirmed plan to pay the full amount it now seeks as a secured

claim.  Section 1327(a) of the Bankruptcy Code provides that the "provisions of a confirmed plan

bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the

plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."  11

U.S.C. § 1327(a).  In *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), the

Supreme Court held that a provision in a confirmed plan bound a creditor who had actual notice

of the bankruptcy, filed a proof of claim, but failed to raise a timely objection.  *Id*. at 275.  The

Seventh Circuit was enforcing confirmed plans long before *Espinosa*.  *See, e.g., Bartlett v. Fifth*

*Third Bank*, 619 F. App'x 525, 528 (7th Cir. 2015) (a confirmed plan can only be attacked by a

party with no adequate notice of a bankruptcy proceeding); *In re Harvey*, 213 F.3d 318, 321 (7th

Cir. 2000) (a confirmed plan is like a court-approved contract or consent decree and binds both

the debtor and all the creditors);  *In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) (sophisticated

creditor who allegedly did not receive notice of confirmation hearing but had actual notice of

bankruptcy was not entitled to avoid binding effect of the reorganization plan).  The City is

bound by the terms of Shannon's confirmed plan, and that plan treats its claim as unsecured.

The City cannot change its treatment under the confirmed plan by simply filing an

amended claim after confirmation that asserts a secured claim.  Its claim must instead be treated

as unsecured.  The City could amend its claim post-petition to claim a higher amount.[3]  That

claim would then be paid as an unsecured claim at whatever percentage unsecured creditors will

ultimately receive under the plan, unless Shannon objected to the amended claim.  Shannon has

objected to the City's amended claim in a separate claim objection.  He challenges the basis for

the secured claim, but he also challenges the amount claimed.  Those issues will be addressed in

a separate opinion.  The bottom line here is that the City is not entitled to payment as a secured

---

[3]The Federal Rules of Bankruptcy Procedure set deadlines for filing proofs of claim but
not for amending them.  *See* Fed. R. Bankr. P. 3002(c).  Although the rules of "relation back"
generally apply to amendments of claims, those rules are not relevant here because the claims bar
date for governmental entities like the City is 180 days after the petition date.  Fed. R. Bankr. P.
3002(c)(1).  The government bar date in this case is in September 2018, long after the City filed
its second amended proof of claim.

creditor in this case because it filed an unsecured claim before confirmation and then  accepted

its treatment as an unsecured creditor by not objecting to the plan.

But that does not end the analysis.  The City contends that despite the treatment of its

claim as unsecured in the confirmed plan, it may keep Shannon's car and demand full payment of

the amount owed because the automatic stay does not require it to return the car.  The court must

therefore determine how the stay operates in conjunction with the confirmed plan.


III.    The Automatic Stay

Although Shannon's confirmed plan treats the City's claim as unsecured and the City is

bound by that plan, no plan provision requires the City to return his car.  Only the automatic stay,

11 U.S.C. § 362(a), could do so.  The question is whether it does.

.

A.    Section 362(a)(3) and *Thompson*

Section 362(a)(3) provides that the filing of a bankruptcy petition operates as a stay of

"any act to obtain possession of property of the estate or of property from the estate or to exercise

control over property of the estate."   It is settled law in this circuit that a secured creditor holding

the vehicle of a chapter 13 debtor on the petition date must immediately return it to the debtor

upon the debtor's request.  The creditor then bears the burden of filing a motion seeking adequate

protection after it returns the vehicle to the debtor.  *Thompson,*  566 F.3d at 703-08.

To reach this conclusion, the *Thompson* court began by analyzing the seminal Supreme

Court decision in *U.S. v. Whiting Pools, Inc*, 462 U.S. 198 (1983).  In *Whiting Pools*, the Court

held that a secured creditor must return property of the debtor it had seized pre-petition.  The

8

creditor can then seek adequate protection for its secured interest "rather than [relying on] the

nonbankruptcy remedy of possession." *Id*. at 204. The Court explained that "[a]lthough

Congress might have safeguarded the interests of secured creditors outright by excluding from

the estate any property subject to a secured interest, it chose instead to include such property in

the estate and to provide secured creditors with 'adequate protection' for their interests." *Id*. at

203-204. As a result, the "Bankruptcy Code provides secured creditors various rights, including

the right to adequate protection, and *these rights replace the protection afforded by possession*."

*Id.* at 207 (emphasis added). To hold otherwise "would deprive the bankruptcy estate of the

assets and property essential to its rehabilitation effort and thereby would frustrate the

congressional purpose behind the reorganization provisions." *Id.* at 208.

Relying partly on *Whiting Pools, Thompson* first held that a creditor who seizes a chapter

13 debtor's car pre-petition is "exercising control" over it for purposes of § 362(a)(3) and is

therefore violating the automatic stay. The court reasoned that "[h]olding onto an asset, refusing

to return it, and otherwise prohibiting a debtor's beneficial use of an asset all fit within this

definition" of 'exercising control.'" 566 F.3d at 702. The court explained that the primary goal

of a reorganization is "to group *all* the debtor's property together in his estate such that he may

rehabilitate his credit and pay off his debts," and that "[a]n asset actively used by a debtor serves

a greater purpose to both the debtor and his creditors than an asset sitting idle on a creditor's lot."

*Id*.

*Thompson* next addressed whether a secured creditor is required to return a car to a

chapter 13 debtor or whether the debtor has the burden of seeking turnover of the car. The court

concluded that the stay requires the creditor to return the vehicle immediately and then seek

9

adequate protection from the court if it so desires.  The court reasoned that the Bankruptcy Code

places the burden on the creditor either to seek adequate protection under § 363(e) or move to lift

the stay under § 362(d)(1).  *Id* at 703-04.  The court noted that § 542(a) makes return of a seized

asset "compulsory" and that §§ 362(a) and 542(a) work together "to draw back into the estate a

right of possession that is claimed by a lien creditor pursuant to a pre-petition seizure; the Code

then substitutes 'adequate protection' for possession as one of the lien creditor's rights in the

bankruptcy case. [Citation omitted]." *Id*. at 704.   The court observed that if a creditor is allowed

to retain possession, the burden imposed on the creditor under §§ 362(d) and 363(e) "is rendered

meaningless - a creditor has no incentive to seek protection of an asset of which it already has

possession." *Id*.   For § 363(e) to have meaning, "Congress must have intended for the asset to

be returned to the bankruptcy estate before the creditor seeks protection of its interest." *Id*.  The

court therefore held that a creditor must first return the asset to the bankruptcy estate.  If the

debtor fails to show that he can adequately protect the creditor's interest, the bankruptcy court

then "is empowered to condition the right of the estate to keep possession of the asset on the

provision of certain specified adequate protections to the creditor." *Id*.

   *Thompson* rejected all of the secured lender's arguments for putting the burden on the

debtor to move for turnover and demonstrate that he can provide adequate protection rather than

requiring the creditor to return the car and seek adequate protection. *Id*. at 7.  The court held that

the principles of *Whiting Pools* apply equally in reorganizations under chapter 11 and chapter 13,

and that *any* post-petition retention of a debtor's property violates the automatic stay and is

sanctionable. *Id*. at 706.  The court explained that the stay allows "a debtor free use of his assets

while the court works with both the debtor and creditors to establish a rehabilitation and payment

10

plan," and that leaving the debtor's car in the hands of a creditor "could hamper the debtor from either attending or finding work, which is crucial for garnering the funds necessary to pay off his debts." *Id*. at 707.

*Thompson*, then, requires any secured creditor in possession of a debtor's vehicle to return it immediately and seek adequate protection if it wants protection beyond what the Code provides automatically.  Although *Thompson* involved a consensual lien created by contract, the court also contemplated that its decision would apply to creditors holding possessory liens.  The court cited and quoted *Colortran, Inc.*, 210 B.R. 823 (BAP 9th Cir. 1997), *rev'd on other grounds*, 165 F.3d 35 (9th Cir. 1998), which applied the principles of *Whiting Pools* to possessory liens.

In *Colortran,* Expeditors, a shipper for the debtor, claimed a possessory lien arising from a contract on goods it was shipping when Colortran filed a bankruptcy petition.  Expeditors refused to release the goods without payment, asserting that possession was necessary to retain its lien.  The court concluded that Expeditors violated the automatic stay by exercising control over property of the estate.  The court described the issue as follows: "When the creditor's perfection of its security interest is dependent on possession of estate property, the question arises how the creditor can comply with §§ 362 and 542 and still protect its perfected security interest."  210 B.R. at 827-28.  It then held:

> A creditor who requires possession in order to achieve or maintain perfection has the right to file a motion for relief from the stay and request adequate protection such that its lien rights are preserved. However, the creditor must tender the goods or face sanctions for violation of the stay. The creditor has a right to and may request terms of adequate protection while simultaneously returning the goods. However, while the creditor may suggest terms of adequate

11

> protection, it may not unilaterally condition the return of the
> property on its own determination of adequate protection.

*Id*.

This passage from *Colortran* was quoted in full in *Thompson*.  566 F.3d at 704.  Thus, the

City and all possessory lien holders were on notice that *Thompson* required them to return

vehicles to chapter 13 debtors as soon as petitions are filed, as all lien holders must.  The burden

is then on the creditor to seek adequate protection of its lien interest.  This permits the debtor to

use his vehicle for the benefit of all creditors while protecting the lien interest of the lien holder.

Here, by refusing to give back Shannon's car, the City has violated § 362(a)(3).


B.    Section 362(a)(6)

As an *amicus* brief points out, the City has also violated the stay in another way:  by

demanding payment as a precondition to releasing Shannon's car.  Section 362(a)(6) prohibits

"any act to collect, assess, or recover a claim against the debtor that arose before the

commencement of a case under this title."  11 U.S.C. § 362(a)(6).  This prohibition includes a

passive refusal to cooperate with a debtor in order to coerce the payment of a pre-petition debt.

*See, e.g., In re Sportfame of Ohio, Inc. v. Wilson Sporting Goods Co. (In re Sportfame of Ohio,*

*Inc.)*, 40 B.R. 47 (Bankr. N.D. Ohio 1984) (supplier's refusal to ship goods to debtor for cash

unless debtor paid 100% of its pre-petition debt violated  § 362(a)(6)); *In re Parkman*, 27 B.R.

460 (Bankr. N.D. Ill. 1983) (University's refusal to allow debtor to attend classes until full

payment of pre-petition debt violated § 362(a)(6)), *overruled on other grounds*, *Wilson v. Harris*

*Trust & Sav. Bank*, 777 F.2d 1246 (7th Cir. 1985); *In re Haffner*, 25 B.R. 882 (Bankr. N.D. Ind.

12

1982) (Department of Agriculture's refusal to enter into transaction with debtor-farmer unless

debtor paid its pre-petition debts violated § 362(a)(6)).

In the typical case involving a car that the City impounded pre-petition, the City will not

release a debtor's car without a lump sum payment (often over $1,000) and treatment in the

debtor's plan as a fully secured creditor for the remainder of the amount claimed.  In this case,

the City apparently did not realize it was holding Shannon's car until after confirmation and so

did not demand payment from Shannon until after confirmation when Shannon asked for his car

back.[4]  That demand was an act to collect a pre-petition debt that violated § 362(a)(6).

The City argues that it did not violate § 362(a)(6) because it did not demand a lump sum

payment in this case and, to the extent it demands such a payment in other cases, it is merely

seeking adequate protection of its interest.  This argument has no merit.  Refusing to return

Shannon's car unless he moves to amend his confirmed plan and pay the entire amount the City

alleges he owes was an attempt to collect a pre-petition debt, whether the City demanded a lump

sum up front or not.  To the extent the City wanted adequate protection of its interest in the car, it

had to file a motion with the court.  Although the City is free to negotiate with a debtor to reach

agreement on the adequate protection it will seek, it cannot decide on its own what constitutes

adequate protection and withhold the car until a debtor gives it what it demands.  *See, e.g.,*

*Whiting Pools*, 462 U.S. at 204; *Thompson*, 566 F.3d at 705; *In re Sharon*, 234 B.R. 676, 685

(BAP 6th Cir. 1999).  That is an act to collect a debt in violation of § 362(a)(6).

---

[4]The City states that it relied on the Shannon's schedules, which listed the City as an
unsecured creditor, instead of searching its own records.

13

C.      Section 362(a)(4)

The City is also violating the stay in yet another way.  Section 362(a)(4) prohibits "any act to create, perfect, or enforce any lien against property of the estate."  11 U.S.C. § 362(a)(4). A possessory lien may be enforced by the retention of possession.  *See, e.g., Bull v. Mitchell*, 114 Ill. App. 3d 177, 181, 448 N.E.2d 1016, 1019  (3rd Dist.1983).  The City's continued possession of Shannon's car, combined with its demand for payment before it will release the car, is an act to enforce its lien.  *See In re Peake*, No. 18 B 16544, 2018 WL 3946169, at *16 (Bankr. N.D. Ill. August 15, 2018); *In re McFarland*, No. 07–00058, 2008 WL 4550378 (Bankr. M.D. Fla. July 24, 2008) (§ 364(a)(4) violated by building code enforcement board that issued order assessing administrative fine every day until compliance); *In re Microfab, Inc.*, 105 B.R. 152, 160 (Bankr. D. Mass. 1989) (State violated § 364(a)(4) when it recorded an environmental "superlien" against the debtor's property);  *In re Serbus*, 53 B.R. 187 (Bankr. D. Minn. 1985) (creation of possessory lien violates sec. 362(a)(4)).  The City violates the automatic stay every day that the City refuses to return possession of the car to Shannon for the purpose of enforcing its lien.


Thus, by refusing to return Shannon's car to him, the City has violated at least three provisions in the automatic stay  - § 362(a)(3), § 362(a)(4), and § 362(a)(6) - and the dictates of *Thompson*.


IV.     The City's Arguments to Avoid *Thompson*

The City seeks to avoid *Thompson* in several ways.  None is persuasive.

14

A.    <u>Thompson Questioned</u>

First, the City argues that *Thompson* was wrongly decided.  Obviously, all lower courts in the circuit are bound by *Thompson*.  *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004).[5]

The City also argues that a more recent Seventh Circuit decision,  *In re Thorpe*, 881 F.3d 536 (7th Cir. 2018), conflicts with *Thompson*.  This argument has no merit.  The two decisions address different issues.  As discussed above, *Thompson* confronted head-on the application of the automatic stay to a creditor holding a chapter 13 debtor's vehicle.  *Thompson* held that the stay required the creditor to return the car to the debtor, and concluded that the debtor need not file an adversary proceeding seeking turnover.  Instead, the burden was on the creditor to request adequate protection if it wanted to protect its interest in the car.

*Thorpe*, by contrast, did not address the automatic stay at all.  In *Thorpe*, a chapter 7 trustee and the debtor's ex-spouse were battling over whether the debtor's interest in the marital home was property of the estate and therefore property the trustee could sell.  The case involved state law property rights of spouses in a divorce proceeding filed before the bankruptcy case. The court held that under state law, any interest the debtor husband held in the property on the petition date was subject to the wife's interest that arose pre-petition under state law when the divorce petition was filed.  The court reached the unremarkable conclusion that the bankruptcy

---

[5]It is worth noting that theories advanced in two articles cited by the City were persuasively rebutted in a recent article in the same publication.  *See* Eugene Wedoff, *The Automatic Stay Under § 362(a)(3) – One More Time*, 38 No. 7 Bankruptcy Law Letter NL 1 (2018); Ralph Brubaker, *Turnover, Adequate Protection, and the Automatic Stay* (Part I), 33 No. 8 Bankruptcy Law Letter NL 1 (2013); Ralph Brubaker, *Turnover, Adequate Protection, and the Automatic Stay* (Part II), 33 No. 9 Bankruptcy Law Letter NL 1 (2013).

15

estate included only the interests the debtor held under state law on the petition date, nothing

more.  The court noted that the trustee warned that this conclusion would undermine bankruptcy

policy.  *Id*. at 542.  The court remarked that it had repeatedly held that the Bankruptcy Code is

not intended to expand a debtor's rights beyond those existing at the commencement of the case

under non-bankruptcy law.  The court's statement, which the City quoted, reflects a fundamental

bankruptcy principle set forth in *Butner* and countless other decisions.  *Butner v. U.S.*, 440 U.S.

48, 99 S.Ct. 914 (1979).  *Thorpe* has nothing to do with the automatic stay.

The City's argument that this decision somehow calls *Thompson* into question misuses a

simple statement of long-standing bankruptcy law.  The City contends that if it has to give

Shannon's car back, it will lose a property right it had when the petition was filed, and Shannon

will have gained one:  possession.  This argument confuses lien rights with ownership rights.  A

lien is defined in the Bankruptcy Code as a "charge against or interest in property to secure

payment of a debt or performance of an obligation."  11 U.S.C. § 101(37).  In other words, a lien

is simply a means of securing payment of a debt; it does not confer ownership of the property.

*See, e.g., In re Denby-Peterson*, 576 B.R. 66, 79 (Bankr. D.N.J. 2017) (enforcing debtor's

ownership rights in a repossessed vehicle); *Hall v. Savary (In re Savary)*, 57 B.R. 298, 299

(Bankr. M.D. Fla.1986) (enforcing chapter 11 estate's ownership rights in a replevied tractor

loader); *Troy Indus. Catering Service v. State of Michigan (In re Troy Indus. Catering Service)*, 2

B.R. 521, 523 (Bankr. E.D. Mich. 1980) (pre-bankruptcy seizure of restaurant equipment does

not operate to transfer title).  The City took possession of Shannon's car to perfect its lien, but the

City did not become the owner of the vehicle when it did so.  Possession was simply the means

of perfecting the lien, not a bankruptcy-proof property right.  As discussed above, *Whiting Pools*

16

squarely rejected the City's contention that a secured creditor cannot be forced to give up

possession of an asset the debtor still owns on the petition date.  *Thorpe* in no way conflicts with

the holding in *Thompson* that the automatic stay requires a secured creditor to return a chapter 13

debtor's car.


B.      Section 362(b)(3) - Exception to Automatic Stay for Perfection of Certain Liens

Next, the City argues that *Thompson* does not require return of Shannon's car because the

exception in § 362(b)(3) applies in this case.  Section 362(b)(3) creates an exception to the

automatic stay for "any act to perfect, or to maintain or continue the perfection of, an interest in

property to the extent that the trustee's rights and powers are subject to such perfection under

section 546(b) of this title . . . ."  11 U.S.C. § 362(b)(3).  Section 546(b) limits a trustee's

avoidance powers when a generally applicable law allows secured creditors to perfect or maintain

perfection of liens against an earlier lien holder.  Section 546(b)(1) provides:

> The rights and powers of a trustee under section 544, 545 and 549 of this title are
> subject to any generally applicable law that –
>
> > (A) permits perfection of an interest in property to be effective against an entity
> > that acquires rights in such property before the date of perfection; or
> >
> > (B) provides for the maintenance or continuation of perfection of an
> > interest in property to be effective against an entity that acquires rights in
> > such property before the date on which action is taken to effect such
> > maintenance or continuation.

11 U.S.C. § 546(b)(1).

17

These provisions work together to permit a creditor to protect its lien from the avoiding

powers of a trustee in limited circumstances after a bankruptcy is filed.  They apply only if non-

bankruptcy law would permit the later perfection or act to continue perfection to relate back to an

earlier date before perfection, making the lien effective against parties who acquired an interest

in the property before the lien was perfected (i.e., a chapter 7 trustee asserting avoiding powers of

a hypothetical judgment creditor under § 544(b)(1), as discussed below).  The classic example is

a creditor with a security interest in goods under the Uniform Commercial Code ("UCC") that

could be perfected by filing a financing statement during a specified period after the lien was

created.  If the financing statement is filed in that time, perfection relates back to the date the lien

was created.  *See, e.g., In re Grede Foundries, Inc.,* 651 F.3d 786, 791 (7th Cir. 2011).  The

retroactive effect gives the creditor priority over other creditors who acquired an interest in the

goods after the lien was created but before it was perfected.  The exception to the stay in §

362(b)(3) permits the creditor to file the financing statement post-petition to stop a trustee from

avoiding what would otherwise be an unperfected lien.

The City argues that this exception applies to its rights under the Chicago municipal

ordinances governing the impoundment of vehicles.  The City raises over $260 million per year

from parking and red light ticket violations, a significant portion of its budget.[6]  As the City

acknowledges, a number of years ago, debtors whose cars were seized and who were unable to

pay the fines began to file chapter 13 bankruptcy cases.  These debtors sought the release of their

_____

[6]*See* Lauren Nolan, Woodstock Institute, "Enforcing Inequality: Balancing Budgets on the
Backs of the Poor," June 2018 ("tickets issued in 2016 brought in $264 million, which was seven
percent of the City's operating budget.")   The City apparently concedes that it raises $264
annually from tickets but it contends that this figure represents 2.6% of the City's budget.  *See
City of Chicago's Motion for Stay Pending Appeal*, n. 1, *In re Peake*, 18 B 16544, dkt. no. 47**.**

cars and to pay the fines over time through their chapter 13 plans.  The City's initial practice was

to release the cars under *Thompson*.  City Response to Amicus Brief at 1.  Then, in November

2016, the City adopted an ordinance giving itself what it calls a "possessory lien."  The ordinance

provides that any vehicle impounded by the City is subject to a possessory lien in favor of the

City in the amount required to obtain release of the vehicle.  Chi. Mun. Code § 9-92-080(f).  The

City then began refusing to return cars to chapter 13 debtors, arguing that it had a possessory lien

that qualified for the exception to the stay in § 362(b)(3).

   The City never specifically articulates why § 362(b)(3) applies in this case.  It cites two

decisions that agree with its position on this issue:  *In re Avila*, 566 B.R. 558 (Bankr. N.D. Ill.

2017) and *City of Chicago v. Kennedy*, No. 17-5945, 2018 WL 2087453 (N.D. Ill. May 4, 2018).

It then generally argues that § 362(b)(3) allows a creditor with a pre-petition lien to take any act

to maintain perfection of that pre-petition lien without violating the stay.  It states that "continued

possession continues the perfection of that interest and thus is not a violation of the automatic say

under § 362(b)(3)."  City Resp. at 4.  The City never parses the specific language of § 362(b)(3),

§ 546(b) on which it depends, or § 544 to which § 546(b) refers, nor does it explain how any

specific provisions of the ordinance bring the City's actions within this exception to the stay.

   Based on the citations of *Avila* and *Kennedy*, the court assumes the City contends that its

ordinance allows its lien to prime the lien of prior lienholders, at least with respect to towing and

storage costs (but not the actual fines and penalties owed by the vehicle owner).  *See Avila*, 566

B.R. at 560.  Section 2-14-132 of the Chicago Municipal Code allows the City to impound a

vehicle until administrative penalties, towing charges, and storage fees are paid on all

"outstanding final determinations" of parking and other violations.  Chi. Mun. Code § 2-14-132.

19

It also provides that a person with a lien recorded against a vehicle as to which foreclosure

proceedings had begun can obtain possession if he pays the applicable towing and storage fees

and agrees in writing to refund to the City the net proceeds of any foreclosure sale after all lien

holders of record are paid. *Id., § 9-92-080(c)*. *Avila* held that because these provisions give the

City priority over previous lien holders, they fall under § 546(b)(1) and therefore the exception to

the automatic stay in § 362(b)(3) applies.

A closer look at these provisions, however, reveals that they do not apply here.


1.      Section 362(b)(3) must be interpreted with § 546(b)

Section 362(b)(3) provides that the stay does not apply to any act to perfect or maintain or

continue perfection of an interest in property to the extent that the trustee's rights and powers are

subject to such perfection under § 546(b).   Thus, the scope of the exception can only be

determined by examining § 546(b).

Section 546(b) limits a trustee's avoiding powers under §§ 544, 545, and 549 of the

Bankruptcy Code.   The only one of these provisions that could potentially apply here is § 544.[7]   It

allows a trustee to avoid any interest in property that a judgment creditor holding a judgment lien

that arose when the bankruptcy petition was filed could avoid under state law.   11 U.S.C. §

544(a)(1).   Section 546(b)(1) provides that the trustee's rights and powers to avoid an interest in

property under § 544 are "subject to" - meaning limited by - certain generally applicable laws

---

[7]Section 545 sets forth grounds for a trustee to avoid a statutory lien, none of which apply
to the City's lien.   Section 549 permits a trustee to avoid post-petition transfers of property.   It
also does not apply here.

that allow perfection of the interest to be effective against parties holding interests before the actual date of perfection.

### 2.   Section 546(b)(1)(A)

In this case, a trustee's avoiding powers are not limited by ("subject to") the City's ordinances.  Section 546(b)(1)(A) says that the trustee's power to avoid is limited by any generally applicable law that "permits *perfection* of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection."  11 U.S.C. § 546(b)(1)(A) (emphasis added).  This provision addresses the initial perfection of the lien.  It does not apply here, though, because the City perfected its possessory lien pre-petition by taking possession of the car.

As the Seventh Circuit held when it interpreted § 363(b)(3) in conjunction with § 546(b)(1)(A), "the narrow purpose of this 'exception is to 'protect, in spite of the surprise intervention of [the] bankruptcy petition, those whom State law protects' by allowing [creditors] *to perfect* an interest they obtained before the bankruptcy proceedings began. (emphasis added)" *Reedsburg Utility Comm. v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d at 791 (citations omitted).  The court further explained that "'if an interest holder against whom the trustee would have rights still has, under applicable nonbankruptcy law, as of the date of the petition, the opportunity to perfect his lien interest against an intervening interest holder, then he may perfect his interest against the trustee. (Citations omitted)."  *Id.*  The court noted that "[t]he paradigm § 546(b) case arises under the Uniform Commercial Code, where a perfected security

interest relates back to either the filing of a financing statement or the date that the security

interest attaches. . . .  If the creditor has a pre-petition unperfected interest in the debtor's

property, this exception allows the creditor to take the steps necessary to perfect that interest

because '[s]uch a *perfection* of a lien is not considered the *creation* of a lien." *Id.* (Citations

omitted).  Here, it is beyond question that the City already perfected its lien pre-petition by taking

possession of Shannon's car.  Section § 546(b)(1)(A) does not apply.


      3.      <u>Section 546(b)(1)(B)</u>

Section 546(b)(1)(B) does not apply either.  That section provides that the rights of a

trustee to avoid an interest in property under § 544 are subject to any generally applicable law

that

> provides for the maintenance or continuation of perfection of an interest in property to be
> effective against an entity that acquires rights in such property before the date on which
> action is taken to effect such maintenance or continuation.

11 U.S.C. § 546(b)(1)(B).  Section 362(b)(3) then lets a creditor take those acts permitted under

generally applicable law to defeat the trustee's avoidance actions without violating the stay.  It

permits acts "to perfect, or to maintain or continue the perfection" of an interest, but only "*to the*

*extent* that the trustee's rights and powers are *subject to* such perfection under § 546(b) . . . ."  11

U.S.C. § 362(b)(3) (emphasis added).

The City's actions do not fall within these provisions for two reasons.  First, the City's

ordinance does not say anything about the continuation or maintenance of perfection.  Second,

the trustee could not avoid the City's lien interest under any circumstances so the section does

not apply.  The City does not keep debtors' cars so it can defend its liens against an attack by a

trustee or anyone else.  It keeps the cars to pressure debtors to pay the full outstanding debt

despite the filing of a chapter 13 case, as it did in this case.  That is exactly what *Thompson*

prohibits.


a.    City's Ordinances Do Not Fall Within § 546(b)(1)(B)

As noted above, the City adopted an ordinance in November 2016 creating a possessory

lien for itself when it seized a vehicle for failure to pay traffic related fines and other charges.

The 2016 ordinance declares:  "Any vehicle impounded by the City or its designee shall be

subject to a possessory lien in favor of the City in the amount required to obtain release of the

vehicle."  Chi. Mun. Code § 9-92-080(j).

Nothing in the ordinance or any other part of the Municipal Code addresses how long the

lien continues or even whether possession is required to maintain it.  The ordinance nowhere

provides for the maintenance or continuation of the lien "being effective against an entity that

acquires rights in such property before the date on which action is taken to effect such

maintenance or continuation."

In addition, as another decision recently concluded, the City's ordinances cannot fall

within § 546(b)(1)(B) because there can be no "date on which action is taken to effect such

maintenance or continuation" of the City's possessory lien.  *In re Peake*, No. 18 B 16544, 2018

WL 3946169 (Bankr. N.D. Ill. August 15, 2018).  This court agrees and adopts *Peake's* analysis

on this issue.  *See Peake*, 2018 WL 3946169 at *11 - 12.

Section 546(b)(1)(B) was intended to permit creditors to comply with laws like the UCC

that require continuation statements or other notice to continue pre-petition perfection of a

security interest to prevent the initial perfection from lapsing.  *See*, *e.g.*, 810 ILCS §§ 5/9-308(a), 5/9-310(a), 5/9-515; *In re Wilkinson*, No. 10 B 62223, 2012 WL 1192780, at *1 (Bankr. N.D.N.Y. Apr. 10, 2012); *Schafer v. Carolina Kitchen and Bath, Inc. (In re Orndorff Constr., Inc.)*, 394 B.R. 372, 376 (Bankr. M.D.N.C. 2008).  *Whiting Pools,* decided in 1983, required a secured creditor with possession of collateral to return it to a debtor so the collateral can be used for the benefit of all creditors.  Congress added § 546(b)(1)(B) to the Bankruptcy Code in 1994. Nothing in the language or in the legislative history suggests that it was intended to permit a creditor with a possessory lien perfected pre-petition to keep collateral and avoid complying with the automatic stay and the dictates of *Whiting Pools*.

### b.    Trustee Has No Right to Avoid City's Lien under § 544

Second, § 546(b)(1)(B) does not apply in any event because the trustee would have no right to avoid the City's possessory lien under § 544 in any scenario.  The City had a valid, fully perfected possessory lien when Shannon filed his bankruptcy case.  There is no avoidance action a trustee could bring under § 544 that would avoid the City's lien.  The City therefore cannot rely on § 546(b)(2) to bring it within § 362(b)(3) to avoid complying with the automatic stay.

### 1.    Trustee's Avoiding Powers Under § 544

Section 544, also known as the "strong arm provision," gives a trustee the rights of a hypothetical lien creditor, judgment creditor, or bona fide purchaser for value whose claim arose when the bankruptcy was filed.  *See, e.g., Musso v. Ostashko*, 468 F.3d 99, 104 (2nd Cir. 2006); *In re Wheaton Oaks Office Partners Ltd. P'ship*, 27 F.3d 1234, 1244 (7th Cir. 1994); *Zilkha*

*Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir. 1990); *Reinbold v. Wells Fargo Bank, N.A. (In re Alvarado)*, 517 B.R. 880, 883 (Bankr. C.D. Ill. 2014); *In re Hunt's Pier Assoc.*, 154 B.R. 436, 449 (Bankr. E.D. Pa.1993).   "Not only is a trustee empowered to stand in the shoes of a debtor to set aside transfers to third parties, but the fiction permits the trustee also to assume the guise of a creditor with a judgment against the debtor.   Under that guise, the trustee may invoke whatever remedies provided by state law to judgment lien creditors to satisfy judgments against the debtor."   *Zilkha Energy*, 920 F.2d at 1523.   These remedies include avoiding liens that were not perfected on the petition date.

In this case, the City had a possessory lien that was fully perfected before the bankruptcy case was filed.   Its lien would have a higher priority than the lien of a hypothetical judgment creditor whose rights arose as of the "commencement of the case."   *See, e.g., Stanziale v. Pratt & Whitney (In re Tower Air, Inc.)*, 319 B.R. 88, 99 (Bankr. D. Del. 2004) (a creditor with a fully perfected pre-petition possessory lien has priority over a trustee asserting hypothetical lien rights under §§ 544 and 545); *Plains Cotton Cooperative Assoc. v. Julien Co. (In re Julien Co.)*, 141 B.R. 359, 376 (Bankr. W.D. Tenn. 1992) (trustee's hypothetical judgment lien under § 544 would come ahead of party who failed to perfect possessory lien pre-petition); *In re DiPasquale*, 105 B.R. 187 (Bankr. D.R.I. 1989) (trustee could not avoid the pre-petition possessory lien of a creditor under §§ 544 or 545).   Because the City's lien was perfected pre-petition when it took possession**,** a trustee could not assert any basis under § 544 for avoiding the City's lien.

2.    No Avoidance Action Based on Loss of Possession

The City has not explained how it fits within § 546(b).  But had the City contended it would lose its lien rights if it gave up possession of the car post-petition so a trustee could then take action to avoid its lien under § 544, that contention would fail for two reasons.  First, under non-bankruptcy law a creditor with a possessory lien who gives up possession of property involuntarily does not lose its possessory lien.  Second, even if the City did somehow lose its lien by returning the car to the debtor post-petition, the trustee still would not have a valid avoidance action against it under § 544.

A.    Effect of Involuntary Surrender of Possession

First, the City would not lose its lien if it gave up possession involuntarily to comply with the automatic stay.  As the City acknowledges, courts have long held that a possessory lien is not lost when the holder gives up possession involuntarily.  *See, e.g., Steve Heathcott Arabians, LLC v.Griffith*, No. 16 - 0558, 2017 WL 6616371 (Ariz. Ct. App. Dec. 28, 2017) (plaintiff's possessory lien not defeated by defendant's covert removal of collateral); *Twin Falls County v. Coates*, 139 Idaho 442, 80 P.3d 1043 (2003) (the holders of a possessory lien did not lose their lien when the county took possession under its police power);  *Air Ruidoso, Ltd., Inc. v. Executive Aviation Cntr., Inc.*, 122 N.M. 71, 920 P.2d 1025 (1996) (the holder of a possessory lien does not lose his priority when possession is taken without his consent); *Davis v. Sewell*, 696 S.W. 2d 247 (Tex. App. 1985) (a temporary loss of possession without consent does not defeat a possessory lien).

26

The rule is the same under the UCC, which codified common law.  The UCC's general

rule about perfection by possession is that "[i]f perfection of a security interest depends upon

possession of the collateral by a secured party, perfection occurs no earlier than the time the

secured party takes possession and continues only while the secured party retains possession."

810 ILCS § 5/9-313(d).  The exception is when circumstances outside the creditor's control

interrupt possession.  *Shapiro v. Family Bank of Hallandale*, 538 So. 2d 944 (Fla. Dist. Ct. App.

3rd Dist. 1989); s*ee also Edibles Corp. v. West Ontario Street Ltd. P'ship*, 273 Ill. App. 3d 550,

653 N.E.2d 45 (1st Dist. 1995) (a perfected possessory lien in a bank account was preserved even

though the joint signatories to the account were both the secured party and the pledgor – the

security agreement gave adequate notice to creditors that the pledgor no longer had unfettered

control of the funds); *Raiton v. G & R Properties (In re Raiton)*, 139 B.R. 931, 937 (BAP 9th Cir.

1992) ("To hold that simple loss of possession by the secured party per se invalidates the security

interest would invite uncertainty if not injustice: a secured creditor would automatically lose its

security interest which is dependent on possession whenever collateral is misplaced, converted,

or wrongfully surrendered by the bailee to whom the collateral is entrusted."); *Starr v. Bruce*

*Farley Corp.* (*In re Bruce Farley Corp.*), 612 F.2d 1197 (9th Cir. 1980).

Courts have uniformly held that loss of possession is involuntary when possession is lost

through compliance with a court order.  *See, e.g.,  Twin Sewer and Water, Inc. v. Midwest Bank*

*and Trust Co.*, 308 Ill. App. 3d 662, 673, 720 N.E.2d 636, 644 (1st Dist. 1999) ("[T]he

involuntary relinquishment of retained property pursuant to a court order does not result in a loss

of the lien."); *In re Estate of Miller*, 197 Ill. App. 3d 67, 72, 556 N.E.2d 568, 572  (3rd Dist.

1990) (same).   The same is true when possession is otherwise lost in connection with a judicial

proceeding. *See, e.g., Braendle v. Braendle*, 46 Cal. App. 4th 1037, 54 Cal. Rptr. 2d 397 (Cal.

Ct. App. 1996) (judgment creditor's writ of execution on stock certificates did not deprive the

debtor's wife of her possessory lien on the certificates); *Nat'l Pawn Brokers Unlimited v.

Osterman, Inc.*, 176 Wis.2d 418, 500 N.W.2d 407 (Wis. Ct. App. 1993) (police seizure of

collateral pursuant to a search warrant did not interrupt the lienholders' possession for the

purpose of their possessory liens); *Waterhouse v. Carolina Limousine Mfg., Inc.*, 96 N.C. App.

109, 384 S.E.2d 293 (1989) (sheriff's levy would not interrupt secured possessory interest but for

party's failure to present the issue); *Walter E. Heller & Co., Inc. v. Salerno*, 362 A.2d 904, 907

(Conn. 1974) (security interest perfected by possession survived and had priority over a

subsequent sheriff's levy).

Here, if the City gave up possession of Shannon's car to comply with *Thompson*, its

possessory lien would not be lost because the surrender of the vehicle would be involuntary.  The

automatic stay operates like a court order, enjoining entities from pursuing their rights the same

way a court-ordered injunction does.  *See, e.g., Reed v. US Bank N.A.*, No. 14-cv-05437, 2015

WL 5042244 (N.D. Cal. August 25, 2015); *Johnston v. Parker (In re Johnston)*, 321 B.R. 262

(D. Ariz. 2005); *Thacker v. Etter (In re Thacker)*, 24 B.R. 835 (Bankr. S.D. Ohio 1982).  If the

City complied with *Thompson* by returning the car, it would involuntarily give up possession

under the equivalent of a court-ordered injunction so its lien would be preserved under

nonbankruptcy law.  A trustee would have no basis to "avoid" the lien under § 544 based on the

involuntary, post-petition loss of possession.

The important point here is that the City's ordinance is *not* what would prevent a trustee

from avoiding its possessory lien.  It is the law of possessory liens that would stop the trustee and

28

preserve the City's lien despite the involuntary loss of possession.  At bottom, the City's

ordinance is irrelevant.  Because the avoiding powers of a trustee are not limited by - or "subject

to" - the City's ordinance regarding maintaining or continuing perfection, the City cannot rely on

§ 362(b)(3) to justify its refusal to do what all other creditors with possession of a chapter 13

debtor's car must do:   return it.


                B.      Section 546(b) Does Not Affect the Right to
                          Possession

The key concept here is that § 546(b) does not create or preserve a creditor's right to

possession at all; it only sets limits on the trustee's avoidance powers.  This is made clear in §

546(b)(2).  It addresses nonbankruptcy laws that require seizure to perfect a lien or to maintain or

continue perfection of a lien when the lien was not perfected pre-petition.[8]  When nonbankruptcy

law requires "seizure" for a lien to be perfected (or for perfection to be maintained post-petition),

but the property has not been seized pre-petition, the interest "shall" be perfected, or the

---

[8]Section 546(b)(2) provides:

      (2)       If –

           (A) a law described in paragraph (1) requires seizure of such
           property or commencement of an action to accomplish such
           perfection, or maintenance or continuation of perfection of an
           interest in property; and

           (B) such property has not been seized or such action has not been
           commenced before the date of filing the petition;

           Such interest in property shall be perfected, or perfection of such interest
           shall be maintained or continued, by giving notice within the time fixed by
           such law for such seizure or such commencement.

11 U.S.C. § 546(b)(2).

perfection "shall" be continued, by issuing a notice, not by seizing the property.  The notice is then sufficient to defeat any claim by a trustee asserting the rights of a judgment creditor that arose when the petition was filed.  Section 362(b)(3), in turn, allows the notice to be issued without violating the automatic stay.  That section operates, in effect, as a modification of § 546(b)(1)(A), which might otherwise allow a creditor to perfect a lien by seizing the debtor's property post-petition if it allowed the creditor to prime previous lien holders.  It prevents the creditor from taking possession post-petition and allows the written notice to take the place of possession for purposes of any trustee avoidance action.

This provision illustrates the central purpose of § 546(b):  to protect lien rights against avoidance by a trustee, not to protect rights to possession.  Had Congress intended to allow creditors with possessory liens to keep possession of the collateral despite the automatic stay, it would have said so.  Instead, in §§ 546(b) and 362(b)(3), Congress sought only to prevent a trustee from avoiding the lien of a creditor when only the intervening bankruptcy stopped the creditor from perfecting or continuing perfection of its lien.  Congress wanted to prevent creditors from losing all lien rights because of an intervening bankruptcy, not from losing their right to possession.

The legislative history of § 546(b) makes this abundantly clear.  "The Trustee's rights and powers under certain of the avoiding powers are limited by section 546 . . . if an interest holder against whom the trustee would have rights still has, under applicable nonbankruptcy law, and as of the date of the petition, the opportunity to perfect his lien against an intervening interest holder, then he may perfect his interest against the trustee." S. Rep. 95-989, 86, 1978

30

 U.S.C.C.A.N. 5787, 5872.  There is no mention in the legislative history of § 546(b)(1)(B) of

any intent to permit possessory lienholders to keep possession of collateral.


C.   Section 362(b)(3) Limited to Acts Necessary to
Defeat Trustee

The City argues that the exception to the stay in § 362(b)(3) applies even if the City

would retain its lien when it loses possession involuntarily.  The City says that Congress took the

question of whether the lien holder would have a common law defense to losing its lien "off the

table by simply providing that a lienholder may take any act that it is allowed to take under non-

bankruptcy law to continue perfection of its prepetition lien."  City Resp. to *Amicus* Brief at 6-7.

In fact, the opposite is true.  As discussed above, Congress expressly tied any action

excepted from the stay to defeating the trustee's avoiding powers.  Section 546(b)(1)(B) declares

that "the rights and powers of a trustee under sections 544 . . . are subject to" nonbankruptcy laws

allowing maintenance or continuation of perfection to relate back.  11 U.S.C. § 546(b)(1)(B).

Section 362(b)(3) then excepts from the stay any act to maintain or continue perfection but only

"*to the extent* that the trustee's rights and powers are subject to such perfection under section

546(b) . . . ."  11 U.S.C. § 362(b)(3) (emphasis added).  The City's interpretation - that it can rely

on the exception to the stay because its ordinance primes previous liens regardless of whether the

ordinance creates a defense to an avoidance action - writes out of both § 362(b)(3) and § 546(b)

all those words tying the acts permitted to limits on the trustee's avoiding powers.

In a similar vein, the City argues that the doctrine that a lien holder does not give up its

lien if it loses possession involuntarily cannot be invoked by debtors because it is intended as a

31

shield for creditors, not a sword for debtors.  But it is precisely because this doctrine is a shield,

in fact a complete defense, to any avoidance action that the exception to the stay does not apply.

This doctrine, not the City's ordinances, is what protects the City from a trustee's avoidance

action based on a loss of post-petition possession.

           D.      <u>City's Lien Preserved against Later Acquired
Interests</u>

The City next contends that even though an involuntary surrender does not eliminate a

possessory lien, the surviving lien is not effective against an intervening third party who acquires

an interest in the property without notice of the lien.  For this proposition the City cites only a

section of Corpus Juris Secundum on "Animals" and a 1939 New Mexico case involving a lien

on livestock.  In that case, the lienholder allowed livestock to be taken from his possession "over

his objection" but failed to do anything to protect his lien until five months later, by which time

an innocent third party had purchased the property.  *Bell v. Dennis*, 43 N.M. 350, 93 P.2d 1003

(1939).  The case is no help to the City.  The New Mexico Supreme Court later recognized that

when a possessory lien holder loses possession by force or fraud, "the possessory lien is not

extinguished even though actual possession was lost."  *Air Ruidoso, Ltd., Inc. v. Executive

Aviation Cntr., Inc.*, 122 N.M. 71, 75, 920 P.2d 1025, 1029 (1996).

Here, the City would give up possession involuntarily in the context of a very public

bankruptcy case.  No party who acquired an interest in a debtor's car after the City surrendered it

could be an "innocent" third party without notice of the City's lien.  First, no interest in the car

could be acquired while the bankruptcy case is pending.  The automatic stay prohibits any act to

create, perfect or enforce any lien against property of the estate. 11 U.S.C. § 362(a)(4). Any

attempt to create such an interest would be void. *See, e.g., In re Magallanez*, 403 B.R. 558, 561

(Bankr. N.D. Ill. 2009); *In re Serbus*, 53 B.R. 187, 189 (Bankr. D. Minn. 1985).

Second, the City's lien would be expressly preserved in the public record of the

bankruptcy case, which would eliminate any potential claim to "innocent" status. The

Bankruptcy Code requires a chapter 13 plan to preserve the lien of a secured creditor both during

the pendency of the bankruptcy case and after bankruptcy if the case is converted to another

chapter or dismissed without completion of the plan. Section 1325(a) governs the rights of all

secured creditors in chapter 13. A plan cannot be confirmed under § 1325(a) unless one of the

following conditions is met with respect to all secured claims: (1) the secured creditor consents,

(2) the debtor surrenders the collateral, or (3) the plan contains certain required provisions to pay

and protect the lien holder. Section 1325(a)(5)(B) requires the plan to provide that:

(a) the holder of the claim *retains its lien* until the earlier of full payment of the

underlying debt as determined by non-bankruptcy law or discharge, and

(b) *if the case is dismissed or converted* without completion of the plan, *such lien shall*

*also be retained by such holder* to the extent recognized by applicable non-bankruptcy

law.

11 U.S.C. §§ 1325(a)(5)(B)(i)(I), (II).

Thus, the plan *must* provide that the City's lien is preserved if the case is dismissed

before the plan is completed unless the secured creditor consents to other treatment. This

required provision would give notice to the world of the continued existence of the City's lien if

the bankruptcy case is dismissed before the debtor completes all payments.[9]  The notice would eliminate any possibility that a party who later acquired rights in the vehicle could claim to be an innocent third party without notice of the City's lien.  In fact, it would be much easier for a third party to get notice of the City's lien through a bankruptcy case than if the City had possession, which could not be determined from a public records search or any other generally available means.

The City may also give immediate notice of its preserved lien rights as soon as it learns of a bankruptcy case by filing a motion for adequate protection of its lien under § 363(e).   It can assert its lien rights in the motion itself, which is a public record, and seek a court order confirming the preservation of its lien after the vehicle is returned to the debtor.  This notice would eliminate any possibility of an innocent intervening creditor if a case is dismissed before a plan containing the language preserving the lien is filed.  Thus, even if the City were correct that the involuntary loss of possession would not protect its lien as against intervening third parties without notice, the Bankruptcy Code provides various means that eliminate that possibility.[10]

---

[9]Shannon's plan contains no such language in this case but the City did not object so it consented to its treatment as an unsecured creditor and the failure to include this language in the plan.

[10]To the extent *In re Peake* suggests that the City could lose its lien to a party who lacks actual notice of the City's lien and who acquires an interest in the vehicle after dismissal of the bankruptcy case, this court respectfully disagrees.  A creditor who loses possession involuntarily does not lose its lien position in the property.  This is true in bankruptcy, for all the reasons discussed above, and outside of bankruptcy.  The City's interest would be higher in priority than any interest acquired in the property after dismissal of a bankruptcy case.

The authorities cited in *Peake* on this question, *see Peake*, 2018 WL 3946169 at *9, stand for the general proposition that a creditor with a possessory lien who loses possession may lose priority as to innocent third parties (although not as between the lienor and the debtor) because a third party would have no notice of the lien.  But none of the cases cited discusses the exception

E.      Possessory Liens Treated the Same as All
Other Liens in Bankruptcy

The City also argues that if it gives up possession of a debtor's car, the lien is no longer

possessory and therefore is an inadequate replacement for what it held pre-petition.  It contends

that its possessory lien would be replaced with an "equitable judicial lien."  The City cites no

authority for its contention that it would hold an "equitable judicial lien," nor does it describe the

attributes of such a lien.  The argument seems to assume that a possessory lien is materially

different from other types of liens, and that the City cannot be deprived of that possessory right in

bankruptcy.  But *Whiting Pools* squarely rejected the argument that nothing can substitute for

possession:

---

that applies when the creditor loses possession involuntarily.   The sole exception is *Yellow Mfg.
Acceptance Corp. v. Bristol*, 193 Or. 24, 236 P.2d 939 (Or. 1951).  In *Yellow Mfg.*, the court
concluded that the lien is preserved when possession is lost involuntarily: "Priority of a
possessory or nonpossessory lien over that of a chattel mortgage is not lost where the property is
taken from the actual possession of the lien claimant *without his consent* by force or fraud, or
where the property is taken from him involuntarily, as by a replevin action." 193 Or. at 41, 236
P.2d at 947 (emphasis in original).

The Restatement section cited in *Peake* also makes clear that when possession is lost
involuntarily, the possessory lien trumps even a *bona fide* purchaser:

> The lien is a legal interest dependent upon possession.  Where the lienor
> voluntarily gives up possession, his lien as least so far as it is a legal interest, is
> gone.  The lienor . . . does not lose his legal interest if he is deprived without his
> consent of his possession either by the bailor [owner] or a third person.  If the
> lienor's surrender of possession is voluntary but obtained by fraud, the lienor can
> recover the chattel unless third person in the meantime have acquired interests.
> *Where possession is taken without the consent of the lienor, even a bona fide
> purchaser is subject to the lien*, provided the chattel is non-negotiable.

Restatement (First) of Security § 80, Comment c. (1941).

35

> In effect, § 542 grants to the estate a possessory interest in certain property of the
> debtor that was not held by the debtor at the commencement of the proceedings.
> The Bankruptcy Code provides secured creditors various rights, including the
> right to adequate protection, and these rights replace the protection afforded by
> possession.

*Whiting Pools*, 462 U.S. at 207

Through this argument and all of its other arguments in this case, the City is really

contending that possessory lien holders get better treatment in bankruptcy than other lien holders.

Not so.  As discussed above, all secured creditors in a chapter 13 case are entitled to the same

treatment.  *See* 11 U.S.C. § 1325(a)(b)(B).   Possession is simply the means by which the City

perfected its lien on Shannon's car.  The lien itself is a "charge against or interest in property to

secure  payment of a debt or performance of an obligation."  11 U.S.C. § 101(37); *Dircks v.*

*Global Financial Credit, LLC (In re Dircks)*, 329 B.R. 687, 692 (Bankr. C.D. Ill. 2005); *see U.S.*

*v. Reed*, 668 F.3d 978, 982 (8th Cir. 2012) ("A lien is a property right, usually a legal right or

interest that a creditor has in a debtor's property").  This is true whether the lien is created by

contract or statute and whether it is created or perfected by taking possession or some other

means (such as filing a UCC financing statement).  *Id.* at 983.  The City's lien rights are neither

superior to, nor treated any better than, the rights of any other secured creditor in chapter 13.


                F.     Decisions from Other Jurisdictions Construing §
                       362(b)(3)

The City cites several decisions from other jurisdictions for the general proposition that

under §§ 362(b)(3) and 546(b)(1)(B), a creditor's post-petition possession of collateral to

maintain perfection a possessory lien does not violate the automatic stay.  *See, e.g., Hayden v.*

*Wells* (*In re Hayden*), 308 B.R. 428 (BAP 9th Cir. 2004); *Boggan v. Hoff Ford, Inc. (In re Boggan)*, 251 B.R. 95 (BAP 9th Cir. 2000); *In re Ingram*, 508 B.R. 98 (Bankr. E.D. Wis. 2014). In each of these decisions, the court determined that a state law permitted the creditor to come ahead of previous lien holders and that it needed to maintain possession to keep its lien. None of these decisions analyzed the language in § 546(b) and § 362(b)(3) regarding limits on the trustee's avoiding powers. Nor did they address the principle that the lien is preserved when possession is lost involuntarily, or that the Bankruptcy Code provides for the preservation of the liens after dismissal of a case without completion of the plan.[11]

### 3.   No Trustee Avoidance Action In Any Event

Finally, the court notes that, as a technical matter, even if there were no law protecting the City from the loss of a lien (whether surrender was voluntary or involuntary), a trustee would have no avoidance action under § 544. The possessory lien would simply evaporate, and any subsequent lien holders would move up in their priority. There would be no lien to "avoid" under § 544. This is in contrast to a creditor who had a lien created by contract pre-petition but failed to perfect it post-petition under a nonbankruptcy law allowing the date of perfection to relate back to the date the lien was created. In that situation, the creditor would have a lien that continued to exist and the trustee could avoid under § 544 because the lien was never perfected. With a possessory lien, there would be no such remaining lien to avoid.

---

[11]The debtor in *Hayden* argued that the 9th Circuit BAP's holding in *Colortran* required the mechanics lien creditor to surrender the collateral. The *Hayden* court concluded that *Colortran* was not binding because it did not address the exception to the stay in § 362(b)(3). While that may be correct, the *Hayden* court did not consider the issues discussed above that require a different result here.

Thus, a trustee could not use any avoiding powers under § 544 to avoid the City's

possessory lien.  Since there are no avoiding powers of the trustee under § 544 that would be

limited by - or "subject to" - the City's ordinances, the exception to the automatic stay in §

362(b)(3) does not apply.

Section 362(b)(3) is a complicated provision that invokes § 546(b), which in turn invokes

§ 544.  The City ignores these complications and simply asserts that because its ordinance lets it

prime a lien of a previous lienholder for storage and towing costs, its lien falls within this very

limited exception to the automatic stay.  But the City cannot shoehorn itself into any provision of

§ 546(b) to qualify for § 362(b)(3), an exception intended only to let parties preserve their lien

rights in bankruptcy, not to retain possession of the debtor's property.   As *Peake* noted, courts

must construe the automatic stay broadly to achieve the goals of reorganization, and must strictly

construe exceptions to the stay.  *See Peake*, 2018 WL 3946169, at *13; *In re Grede Foundries*,

651 F.3d at 790.  Here, the City cannot use this narrow exception to deprive Shannon of use of an

important asset for the benefit of all creditors.


C.    The Police Power Exception to the Automatic Stay - § 362(b)(4)

The City also contends that the police power exception to the stay applies in this case.

Section 362(b)(4) provides that the stay "under paragraph (1), (2), (3) or (6)" of § 362(a) does not

apply to "an action or proceeding by a governmental unit ... to enforce such governmental unit's

... police and regulatory power, including the enforcement of a judgment other than a money

judgment . . . ."  11 U.S.C. § 362(b)(4).  This exception "has been construed narrowly to apply

38

only to the enforcement of state laws affecting health, welfare, morals, and safety." *In re Sori*, 513 B.R. 728, 734 (Bankr. N.D. Ill. 2014) (citing *Cash Currency Exchange, Inc. v. Shine* (*In re Cash Currency Exchange, Inc.*), 762 F.2d 542, 555 (7th Cir.1985)).

The City contends that keeping Shannon's car is an exercise of its police power to enforce traffic laws. This argument fails for three reasons. First, the City falls within the exception to the exception for collecting money judgments. Second, the exception does not apply to actions prohibited by § 362(a)(4). Finally, the City's purpose in this case is to collect money, which falls outside the police power exception.

Section 362(b)(4) expressly excludes from the exception the enforcement of a money judgment. *See, e.g., United States v. Colasuonno*, 697 F.3d 164, 179 & n. 7 (2d Cir. 2012); *In re Halo Wireless, Inc.*, 684 F.3d 581, 587 (5th Cir. 2012); *N.L.R.B. v. P\*I\*E Nationwide, Inc.*, 923 F.2d 506, 512 & n. 5 (7th Cir. 1991); *Penn Terra Ltd. v. Department of Environmental Resources, Com. of Pa.*, 733 F.2d 267, 275 (3d Cir. 1984); *Peake,* 2018 WL 3946169. To determine whether the relief sought is a money judgment, courts consider whether the order or judgment requires payment. 2018 WL 3946169 at \*16; *see In re First Alliance Mortg. Co.*, 263 B.R. 99, 107 (BAP 9th Cir. 2001); *In re Jester*, 344 B.R. 331, 337 (Bankr. E.D. Pa. 2006), *aff'd*, No. 06 - 02126, 2007 WL 781900 (E.D. Pa. Mar. 8, 2007). Here, the City has a money judgment that it is enforcing through impoundment of Shannon's car.

As the *Peake* court explained, an administrative process determines the City's right to payment under its traffic-related laws. This process results in a final determination of liability that permits the City to impound a car. The final determination is the administrative equivalent of a money judgment. *Peake*, 2018 WL 3946169 at \*15. The City would be free to enforce this

judgment through the usual state court processes for collecting a judgment but it can short-circuit

that process by impounding a vehicle, as it has done in this case and countless other cases. *Id.* at

*3. Keeping Shannon's car and demanding full payment of the amount allegedly due is

collecting on a money judgment. It is expressly excluded from the police power exception.

The police power exception also does not apply to acts prohibited by § 362(a)(4). It

applies only to acts covered by § 362(a)(1), (2), (3), and (6). Section 362(a)(4) stays "any act to

create, perfect, or enforce any lien against property of the estate; . . . ." 11 U.S.C. § 362(a)(4).

As discussed above, the City violated § 362(a)(4) by continuing to enforce its lien against

Shannon. There is no police power exception for the City's actions to enforce its lien. *See*

*McFarland v. City of Jacksonville (In re McFarland)*, No. 07–00058, 2008 WL 4550378, at *4

(Bankr. M.D. Fla. July 24, 2008) ("although § 362(b)(4) permits a governmental unit to enforce

its regulatory powers in certain circumstances, the creation, perfection or enforcement of a lien

that is imposed by a governmental unit against property of the estate does not fall within the

exception"); *In re Arsi*, 354 B.R. 770, 773 (Bankr. D.S.C. 2006) (subsection 4 of § 362(a) and

the prohibition against the enforcement of a monetary judgment remain to constrain the exercise

of police power in a bankruptcy case); *In re Microfab, Inc.*, 105 B.R. 152, 160 (Bankr. D. Mass.

1989) (Commonwealth of Massachusetts may not record an environmental "superlien" against

the debtor's property because § 362(b)(4) does not include creation, perfection, or enforcement of

lien in the police power exception).

Finally, the City would not fall within the exception in any event. Actions by

governments to collect debts generally do not fall within the police power exception. Courts

typically employ two tests to determine whether the exception applies: the "pecuniary purpose"

40

test and the "public policy" test:

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety [or public policy]. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate public policy are excepted from the stay.

*Chao v. BDK Indus., L.L.C.*, 296 B.R. 165, 167–68 (C.D. Ill. 2003) (quoting *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 385–86 (6th Cir.2001)); *see Cross v. City of Chicago (In re Cross)*, 584 B.R. 833 (Bankr. N.D. Ill. 2018); *Sori*, 513 B.R. 728.  Both tests, as the City correctly notes, are means to ascertain the purpose of the act in question.

In this case, the City's purpose in impounding Shannon's vehicle is pecuniary.  The City uses impoundment to collect fines and other charges owed for traffic-related violations.  There is no other purpose to the seizure of the vehicle, which the ordinance ties directly and solely to the payment of money.  Vehicles are released only upon the payment of all the money owed.  It makes no difference what types of violations have been assessed against the vehicle owner.  The ordinances do not distinguish between violations in which a driver has done something unsafe and violations of laws that are strictly money-raisers, like failing to pay for parking.  In fact, even when a driver has done something unsafe, impounding the car does not prevent him from driving any car, it just prevents him from driving the impounded car.  The City has other remedies for taking unsafe drivers off the road.  This ordinance does not do that.  It is intended to collect money.

41

The City's own words reveal this intent.  In a 2017 amendment to the Chicago Municipal Code that created a possessory lien in immobilized (booted) vehicles, the City described the 2016 ordinance creating the posessory lien in impounded vehicles this way: "WHEREAS, in response to a growing practice of individuals attempting to escape financial liability for their immobilized or impounded vehicles, in November of 2016, the [City Council] amended the Municipal Code ... to clarify that the city has a possessory lien on those vehicles."  Ordinance, transmitted to the City Council of Chicago by the Committee on Budget and Government Operations on June 28, 2017 and approved by the Corporation Counsel and Mayor Emanuel on July 7, 2017, Exhibit A to debtor's reply brief in *In re George Peake*, No. 18 B 16544, dkt. no. 23.   Thus, the City acknowledged that the 2016 ordinance creating a possessory lien was enacted to stop individuals *attempting to escape financial liability*.  The 2017 ordinance was then expressly enacted to eliminate a "loophole" for booted cars because the 2016 ordinance had the "unintended consequence that the owners of vehicles that are immobilized in place [also known as "booted"] but not impounded, continue to avail themselves of a loophole and thereby *avoid paying monies due to the City . . . ."  Id.* (emphasis added).  By the City's own admission, the collection of fines and the impoundment process is all about money.

The City's conduct in this case reflects this purpose of collecting money.  The City first filed an unsecured claim seeking payment of $3,160 for "parking tickets," based on a list of tickets issued to three license plates over 19 years.  When Shannon demanded his car back after confirmation, the City refused because it claimed Shannon owed it money, not because of any public safety issues.  The City would not release the car unless Shannon amended the plan to pay the $5,600 amount asserted in the City's May 2 amended claim for "parking tickets."  It was not

42

until Shannon filed his motion seeking sanctions that the City raised the police power exception.

It argued that it uses impoundment as part of its scheme of "general deterrence" to ensure

compliance with traffic laws.  Only later in the City's response to an *amicus* brief did it contend

that Shannon's violations constitute matters related to public safety, include three speeding

violations and driving on a suspended license.  These allegations do not change the City's stated

purpose and that impoundment is a collection mechanism for the City.  The impoundment

program raises hundreds of millions of dollar for the City, enough that the City Council was

motivated to take action to stop debtors in bankruptcy from obtaining their cars back without

paying the City in full.

The cases cited by the City to support its assertion that Chicago's vehicle-related laws,

which generate the massive amount of fines the City collects, are about safety and welfare, not

money,  are not on point or persuasive.  Two of the cases, *Valle v. Montgomery Co. (In re Valle)*,

456 B.R. 228 (Bankr. D. Md. 2011) and *In re Thomas*, 355 B.R. 166 (N.D. Calif. 2006), analyze

parking regulations from other jurisdictions and are not persuasive.  Another case considered the

actions of a local government that obtained a TRO against the debtor for alleged building code

violations at a horror theme park, not vehicle-related fines.  *Spookyworld, Inc. v. Town of Berlin

(In re Spookyworld, Inc.)*, 346 F.3d 1 (1st Cir. 2003).  Most of the cases cited from the Northern

District of Illinois involve due process challenges to the City's parking regulations or penalties,

not the police power exception to the stay.  *Robledo v. City of Chicago*, 778 F. Supp. 2d 887

(N.D. Ill. 2011); *Walter v. City of Chicago*, No. 91-6333, 1992 WL 88457 (N.D. Ill. April 27,

1992); *Grant v. City of Chicago*, 594 F. Supp. 1441 (N.D. Ill. 1984); *Pempek v. Edgar*, 603 F.

Supp. 495 (N.D. Ill. 1984).  One of the cases from this jurisdiction analyzes the dischargeability

of a fine "for the benefit of a governmental unit" under 11 U.S.C. § 523(a)(7), also a

differentstandard from the one that applies here. *City of Chicago v. Gallagher (In re Gallagher)*,

71 B.R. 138 (Bankr. N.D. Ill. 1987).   Its analysis is not persuasive.

   As the City says in many ways in its briefs on this motion, it wants to keep Shannon's car

to ensure that he pays the money.  Its possessory lien, which exists solely to collect money, is not

protected by the police power exception.

V.   Conclusion

   The City is bound by the terms of Shannon's confirmed plan.  Its claim will be paid as

unsecured in an amount to be determined in connection with Shannon's claim objection.  The

automatic stay requires the City to return Shannon's car immediately.  The City is free to file a

motion seeking adequate protection of its lien interest.  A separate order requiring the City to

immediately return Shannon's car to him will be issued.

Dated: September 7, 2018

ENTERED:

_____

Carol A. Doyle
United States Bankruptcy Judge